IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-900

WILDEARTH GUARDIANS

        Plaintiffs,
v.

MICHAEL S. REGAN, in his official capacity as Administrator
of the United States Environmental Protection Agency,

        Defendant.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. This case is about ensuring the U.S. Environmental Protection Agency ("EPA") follows through with its mandatory duty to protect clean air in the Denver Metro region of Colorado, northeast Utah's Uinta Basin, and the Northern Wasatch Front region of Utah.

2. Under the Clean Air Act, all areas of the country are legally entitled to healthy, clean air. The Act requires the EPA to set National Ambient Air Quality Standards ("NAAQS") for a suite of air pollutants – human and environmental health-based thresholds for these compounds based on current scientific knowledge.

3. Ground-level ozone, the primary component of smog, is a poisonous gas created when volatile organic compounds ("VOCs") and nitrogen oxides ("NOx"), emitted from oil and gas production, tailpipes, and smokestacks, react with sunlight. Ozone poses numerous adverse health and environmental impacts. Public health impacts from ozone exposure range from respiratory irritation and impairment of breathing to hospitalization to permanent decrease of lung function and

1

an increased risk of premature death. Children, the elderly, and people who are active outdoors are most at risk. Ground-level ozone further harms growing plants, causes defoliation of trees and crops, and can impair the healthy functioning of entire ecosystems.

4. In 1979 the EPA promulgated the first ozone NAAQS. This limit has been repeatedly revised downwards as the serious impacts of ozone pollution have become better understood, first in 1997 and then again in 2008. Most recently, in 2015 the EPA again strengthened the ground-level ozone NAAQS to 0.070 parts per million ("ppm"), based on extensive evidence about ozone's severely harmful effects on both public health and the environment.

5. The Denver Metro-North Front Range region of Colorado and the Uinta Basin and Northern Wasatch Front regions of Utah have violated the 2015 ozone NAAQS for years.[1] In 2018, the EPA designated the regions as in nonattainment with the 2015 NAAQS and classified them as "marginal" nonattainment areas. Under the Clean Air Act, states were required to bring marginal nonattainment areas into attainment of the 2015 ozone NAAQS within three years of the effective date of designation.

6. Where an ozone nonattainment area fails to attain a NAAQS by the required attainment deadline, the EPA must make a "determination" to that effect and reclassify the area to "the next higher classification," often referred to as a "bump up." This bump up has the effect of imposing more stringent safeguards to ensure that harmful ozone is cleaned up. The EPA must make its determination and "bump up" within six months of the missed attainment deadline.

---

[1] The Denver Metro-North Front Range region of Colorado includes all of Adams, Arapahoe, Boulder, Broomfield, Denver, Douglas, Jefferson, and Weld Counties, and most of Larimer County. The Uinta Basin region includes most of Duchesne and Uintah Counties in northeast Utah. The Northern Wasatch front region of Utah includes all of Davis and Salt Lake Counties, and portions of Tooele and Weber Counties.

7. The Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch front regions were required to attain the 2015 ozone NAAQS by 2021. Unfortunately, Colorado and Utah failed to bring these regions into attainment. Thus, within six months EPA was required to make a "determination" that these areas failed to attain and bump them up to "moderate" nonattainment.

8. More than six months have passed since EPA was required to make its determination and reclassify the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch front regions as "moderate" ozone nonattainment areas and the agency still has not taken action. Put simply, the EPA has failed to perform a duty that is not discretionary under the Clean Air Act. By failing to do so, the EPA is allowing air quality in the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch front to continue harming the health and welfare of millions of Coloradans, Utahans, and regional visitors, including WildEarth Guardians' staff and members.

9. WildEarth Guardians ("Guardians") brings this action for declaratory and injunctive relief to enforce a mandatory deadline set forth in the Clean Air Act. Guardians seeks to compel Defendant Michael S. Regan ("Administrator" or "Defendant") in his official capacity as Administrator of the U.S. Environmental Protection Agency ("EPA"), to carry out his overdue legal obligation to formally determine that the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front regions failed to attain the 2015 ozone NAAQS and officially reclassify the regions as moderate nonattainment areas.

10. Guardians seeks a declaration that the Administrator has violated a mandatory duty by failing to make a timely determination regarding the attainment status of the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front areas with respect to the 2015 ozone NAAQS as required by the Clean Air Act, as well as an order compelling the Administrator to fulfill his statutorily-mandated duty to make such a formal determination by a date certain.

# JURISDICTION, VENUE, AND NOTICE

11. This is a Clean Air Act citizen suit against the Administrator alleging a failure of the Administrator to perform a nondiscretionary act or duty under the Clean Air Act. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2) (Clean Air Act citizen suit provision) and 28 U.S.C. § 1331 (federal question).

12. The requested declaratory and injunctive relief is authorized by 28 U.S.C. § 2201(a) (declaratory relief), 28 U.S.C. § 2202 (injunctive relief), 42 U.S.C. § 7604(a)(2) (providing District Court jurisdiction to order Administrator to perform nondiscretionary duty), and 42 U.S.C. § 7604(d) (costs and attorney fees).

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e). EPA maintains a Regional Office in Denver, Colorado – Region VIII – which oversees air quality in Colorado and Utah, including monitoring compliance with the ozone NAAQS in the Denver Metro-North Front Range Area, Uinta Basin, and Northern Wasatch Front. The Denver Regional Office is, in part, responsible for ensuring the Administrator performs the nondiscretionary duty at issue in this Complaint, and a substantial part of the events or omissions giving rise to Guardians' claims occurred in EPA's Denver office. Guardians also maintains an office in Denver, Colorado.

14. On February 10, 2022, by letter served by certified mail, Guardians provided the Administrator with written notice of the claims stated in this action. Guardians provided this notice pursuant to 42 U.S.C. § 7604(b)(2), and 40 C.F.R. §§ 54.2 and 54.3. More than 60 days have elapsed since Guardians' notice, and the Administrator has not yet taken the nondiscretionary duty required by law. There exists between the parties an actual, justiciable controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

## PARTIES

15. Plaintiff WILDEARTH GUARDIANS is a non-profit conservation organization dedicated to protecting and restoring wildlife, wild rivers, wild places, and health in the American West, and to safeguarding the Earth's climate and air quality. Guardians and its members work to reduce harmful air pollution to safeguard public health, welfare, and the environment.

16. As a non-profit corporation, Guardians is a "person" within the meaning of 42 U.S.C. § 7602(e) and is entitled to bring a citizen suit under the Clean Air Act, 42 U.S.C. § 7604(a).

17. Guardians has approximately 188,000 activists and members, many of whom live, work, or recreate in the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front areas affected by the ozone pollution at issue in this case. These members recreate outdoors frequently, commute to work on bicycle, and depend on clean air for their health and quality of life. Their ability to fully enjoy the outdoor amenities offered by these scenic, biologically important, and recreation-packed regions, including hiking, biking, wildlife viewing, camping, picnicking, and outdoor sports, are harmed by the failure of the Administrator to perform his nondiscretionary duty. They are also reasonably concerned regarding the short- and long-term health consequences of repeated exposure to high levels of ozone pollution. This harm arises in significant part from the Administrator's failure to ensure that air quality is sufficiently protected in a timely manner, as mandated by the Clean Air Act. This harm would be eliminated or reduced if the Administrator performed his nondiscretionary duty to determine the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front areas' attainment status with respect to the 2015 ozone NAAQS, because such a determination will result in additional sources of pollution subject to pollution control measures under the state-implemented federal Clean Air Act.

18. The violation at issue in this complaint relates to the Administrator's failure to

determine whether nonattainment areas of Colorado and Utah have attained compliance with the 2015 ozone NAAQS in a timely manner. The Administrator has failed to meet the statutory deadline for making this determination. The Administrator's failure to make this legally-required determination is delaying clean air. If the Administrator finalized his determination that the areas failed to attain compliance with the 2015 NAAQS this determination would immediately trigger additional pollution abatement requirements for the areas by operation of law. Specifically, Colorado and Utah would need to apply more stringent permitting requirements, adopt more stringent clean air safeguards to reduce air pollution, submit plans to clean up the regions' unhealthy air, and set new deadlines for the area to come into attainment with the 2015 ozone NAAQS.

19. The Administrator's unlawful delay is forcing the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front areas – including Guardians' staff and members – to endure greater air pollution and public health risks than permitted by the Clean Air Act.

20. The violations alleged in this Complaint have injured and continue to injure the recreational, aesthetic, and health interests of Guardians and its members. These injuries are traceable to the Administrator's failure to perform a nondiscretionary duty. Granting the requested relief would redress these injuries by compelling action by the Administrator that Congress determined to be an integral part of the regulatory scheme for attaining the 2015 ozone NAAQS.

21. Defendant, MICHAEL S. REGAN, is the Administrator of the United States Environmental Protection Agency. As Administrator, Mr. Regan is charged with implementation and enforcement of the Clean Air Act, including carrying out the nondiscretionary duty at issue in this case. Mr. Regan is sued in his official capacity.

## LEGAL BACKGROUND

22. Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 91-1146, at 1 (1970), reprinted in 1970 U.S.C.C.A.N. 5356, 5356. The Clean Air Act was intended "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b).

23. Consistent with these goals, the Act requires EPA to set NAAQS for certain pollutants, including ozone, "the attainment and maintenance of which . . . are requisite to protect the public health" with "an adequate margin of safety," 42 U.S.C. §§ 7409(a)–(b), and to designate areas with air pollution levels that exceed the national standards as "nonattainment" areas, 42 U.S.C. § 7407(d)(1).

24. Section 109(d)(1) of the Clean Air Act requires the Administrator to complete a "thorough review" of air quality criteria and the NAAQS every five years, and to "make such revisions in such criteria and standards and promulgate such new standards as may be appropriate" under the Act. 42 U.S.C. § 7409(d).

25. After EPA establishes or revises a NAAQS, the Clean Air Act "requires EPA and States to begin taking steps to ensure that the new or revised standards are met." *National Ambient Air Quality Standards for Ozone*, 73 Fed. Reg. 16,436 (Mar. 27, 2008). "The first step is to identify areas of the country that do not attain the new or revised standards, or that contribute to violations of the new or revised standards," and to designate such areas as in a state of "nonattainment." *Id.* The Administrator specifically classifies ozone nonattainment areas as Marginal, Moderate, Serious, Severe, or Extreme, based on the level of pollution monitored in the area. 42 U.S.C. § 7511.

7

26. States in which nonattainment areas are located are required to adopt State Implementation Plans to reduce pollution to below the applicable NAAQS. 42 U.S.C. § 7511a. State and local air quality management agencies develop these plans and submit them to EPA for approval. To receive EPA approval, State Implementation Plans must identify the specific emissions control requirements the state will rely on to attain and/or maintain compliance with the applicable NAAQS. 42 U.S.C. §§ 7502, 7511a.

27. Baseline federal regulatory requirements for State Implementation Plans vary depending on the nonattainment area's classification level, with areas experiencing more severe pollution mandated to do more to improve air quality. For example, plans for all ozone nonattainment areas must require any increase in VOC emissions (an ozone precursor) from major stationary sources to be "offset" by reductions in VOC emissions, but the offset ratio (emissions reductions to increases) ratchets up for more stringent nonattainment classifications. 42 U.S.C. § 7511a. For Marginal Areas, the offset ratio is 1.1, which increases to 1.15 for Moderate nonattainment areas. *Id.*

28. State implementation plans for nonattainment areas are generally due within 3 years of EPA's nonattainment designation. 42 U.S.C. § 7502(b).

29. In 1979 the EPA promulgated the first ozone NAAQS, the 0.12 ppm 1-hour ozone NAAQS. U.S. Envt'l. Prot. Agency, *Revisions to the National Ambient Air Quality Standards for Photochemical Oxidants*, 44 FR 8202 (Feb. 8, 1979). In 1997, after new research on the danger of ozone pollution, EPA promulgated a revised ozone NAAQS of 0.08 ppm, averaged over eight hours, which was determined to be more protective of public health than the previous 1-hour standard. U.S. Envt'l. Prot. Agency, *National Ambient Air Quality Standards for Ozone*, 62 Fed. Reg. 38,856 (July

18, 1997). In 2008, the EPA again revised the 8-hour ozone NAAQS downward from 0.08 to 0.075 ppm. 73 Fed. Reg. 16,436 (Mar. 27, 2008).

30. Most recently EPA strengthened the NAAQS for ozone on October 26, 2015, setting a limit on ozone concentrations in the air of no more than 0.070 ppm on an eight-hour basis. U.S. Envt'l. Prot. Agency, *National Ambient Air Quality Standards for Ozone*, 80 Fed. Reg. 65,292 (Oct. 26, 2015). A violation occurs at a monitoring site when the three-year average of the annual fourth highest eight-hour ozone concentration exceeds 0.070 ppm. 40 C.F.R. § 50.19(b). The 2015 ozone NAAQS provided a higher level of air quality protection than the 2008 NAAQS, based on EPA's determination of public health requirements.[2]

31. Effective August 3, 2018 the Administrator designated numerous regions within the U.S., including the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front, as marginal nonattainment areas for the 2015 ozone NAAQS. EPA, *Additional Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards*, 83 Fed. Reg. 25,776 (June 4, 2018). Marginal areas were given three years to sufficiently improve air quality to meet the new ozone limits. For these areas, the attainment deadline was set for August 3, 2021. 42 U.S.C. §§ 7511(a)(1), (b)(1).

32. Within six months of the attainment deadline, the Administrator has a mandatory, nondiscretionary duty to make a determination, based on the area's design value (at the time of the

---

[2] Note that although EPA adopted this stricter ozone NAAQS in 2015, EPA has retained the 2008 ozone NAAQS of 0.075 ppm which applies *in addition* to the new 2015 standard. U.S. Envtl. Prot. Agency, *Implementation of the 2015 National Ambient Air Quality Standards for Ozone: Nonattainment Area Classifications and State Implementation Plan Requirements*, 83 Fed. Reg. 62,998, 63,000 (Dec. 6, 2018). This was done to prevent areas already in a higher degree of nonattainment for the 2008 standard perversely being 'reset' to the lowest degree of nonattainment for the 2015 standard. For example, the Denver Metro-North Front Range Area is currently in Serious, soon to be Severe, nonattainment for the 2008 standard, while currently only classified as Marginal nonattainment for the 2015 standard.

deadline), whether the area had attained the standard. 42 U.S.C. § 7511(b)(2)(A). Upon the Administrator's finding that an area has not met the standard as of the deadline, the area "shall be reclassified by operation of law" to the next higher nonattainment classification (or an even higher classification if warranted by the pollution levels measured). *Id*. This reclassification triggers requirements for states to then adopt additional pollution control measures. 42 U.S.C. § 7509(d).

## FACTUAL BACKGROUND

33. In June 2018, the Administrator officially designated the Denver Metro-North Front Range area of Colorado and the Uinta Basin and Northern Wasatch Front regions of Utah as in Marginal nonattainment with the 2015 ozone NAAQS, effective August 3, 2018. 83 Fed. Reg. 25,776 (June 4, 2018).

34. After this designation, Colorado and Utah were required to adopt and implement air quality regulations to bring their respective nonattainment areas into attainment with the 2015 NAAQS within three years, so by August 3, 2021. 42 U.S.C. §§ 7511(a)(1), (b)(1); 83 Fed. Reg. 25,776 (June 4, 2018).

35. Colorado and Utah, however, failed to take sufficient action between 2018 and 2021 to improve air quality as needed to protect public health and welfare in the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front areas. Publicly available data show these areas failed to meet the 2015 ozone NAAQS by the attainment date. Colo. Dep't. of Pub. Health & Env't, 2021 *Ozone Summary Table*, available at https://www.colorado.gov/airquality/html_resources/ozone_summary_table.pdf (last accessed Mar. 29, 2022); Utah Dep't of Envt'l Quality, *Ozone Overview and Standard*, available at https://deq.utah.gov/air-quality/ozone-overview-and-standard-moderate-area-ozone-sip (last accessed Mar. 29, 2022).

36. The Administrator had a mandatory, nondiscretionary duty to make the determination as to whether Colorado and Utah's respective ozone nonattainment areas met the 2015 ozone NAAQS by the attainment deadline within six months of that date. 42 U.S.C. § 7511(b)(2)(A).

37. Thus, by February 3, 2022, the Administrator was required to make a formal determination as to whether the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front areas attained compliance with the 2015 ozone NAAQS, as of the August 3, 2021 deadline. The Administrator failed to do make such a determination and has not done so since.

38. If the Administrator finalized his determination that the area failed to attain compliance with the 2015 ozone NAAQS, EPA would be required as a matter of law to "bump up" the classification of the area from "marginal" to "moderate." 42 U.S.C. § 7511(b)(2)(A)(i). This c87 FR 21842hange in classification would require that Colorado and Utah adopt more stringent clean air safeguards to reduce ozone pollution, to submit revised State Implementation Plans to clean up the regions' unhealthy air, and would set a new deadline for the areas to come into attainment with the 2015 ozone NAAQS. *Compare* 42 U.S.C. § 7511(a) (plan submissions and requirements for Marginal areas) with § 7511(b) (plan submissions and requirements for Moderate areas). In essence, the Administrator's delay is forcing the residents of and visitors to the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front areas to endure more air pollution and health risk than the law allows.

39. On April 13, 2022, EPA published a notice of proposed action to determine that Denver Metro-North Front Range and other regions failed to attain the 2015 ozone NAAQS, and provide a one-year attainment deadline extension to Utah for the Uinta Basin. U.S. Envtl. Prot. Agency, *Determinations of Attainment by the Attainment Date, Extensions of the Attainment Date, and*

*Reclassification of Areas Classified as Marginal for the 2015 Ozone National Ambient Air Quality Standards*, 87 Fed. Reg. 21,842, 21,845 (April 13, 2022).[3] However, Section 181(b)(2)(B) of the CAA requires the EPA to publish the final determination of failure to attain and accompanying reclassification in the Federal Register no later than 6 months after the attainment date, which in the case of the Marginal nonattainment areas considered in this proposal was February 3, 2022. 42 U.S.C. § 7511(b)(2)(B). That duty is not satisfied by publication of notice of a proposed action.

## CLAIM FOR RELIEF

**Clean Air Act – Failure to Make a Determination Regarding Colorado and Utah's Compliance or Non-Compliance with the 2015 ozone NAAQS by the Mandatory Deadline of February 3, 2022**

40. Guardians incorporates by reference all allegations in the proceeding paragraphs.

41. Effective August 3, 2018, EPA designated the Denver Metro-North Front Range area of Colorado, and the Uinta Basin and Northern Wasatch Front areas of Utah, as in marginal nonattainment with the 2015 ozone NAAQS.

42. These regions were required to attain compliance with the 2015 ozone NAAQS within three years of their designation, or August 3, 2021.

43. After this marginal nonattainment designation, these regions failed to attain compliance with the 2015 ozone NAAQS by the August 3, 2021 deadline. 42 U.S.C. § 7511(a)(1), (b)(1); 83 Fed. Reg. 25,776 (June 4, 2018).

44. Within six months of the August 3, 2021 attainment deadline, or by February 3,

---

[3] Section 181(a)(5) of the CAA provides the EPA the discretion to extend an area's applicable attainment date by 1 additional year upon application the relevant state if the state meets the two criteria under CAA section 181(a)(5) as interpreted by the EPA in 40 CFR 51.1307. 42 U.S.C. § 7511. In this case EPA did find that Utah met these criteria and proposed to allow Utah's requested extension.

12

2022, the Administrator was required by the Clean Air Act to make a formal determination as to whether the Denver Metro-North Front Range, Uinta Basin, and Northern Wasatch Front Marginal nonattainment areas attained compliance with the 2015 ozone NAAQS as of the attainment deadline. 42 U.S.C. § 7511(b)(2)(A).

45. The Administrator did not make the required attainment determination by the mandatory deadline of February 3, 2022, and has not done so as of the date of this Complaint.

46. Accordingly, the Administrator has violated and continues to violate their mandatory, nondiscretionary duty under 42 U.S.C. § 7511(b)(2)(A).

47. This violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). The Administrator's violation is ongoing and will continue unless this Court grants the requested relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendant has violated and is in violation of his mandatory, nondiscretionary duty under 42 U.S.C. § 7511(b)(2)(A) to make a timely determination by February 3, 2022 regarding whether the Denver Metro-North Front Range area of Colorado and the Uinta Basin and Northern Wasatch Front areas of Utah, attained compliance with the 2015 ozone NAAQS by August 3, 2021;

B. Order Defendant to perform his mandatory, nondiscretionary duty under 42 U.S.C. § 7511(b)(2)(A) by a date certain to make a formal determination regarding whether or not the Denver Metro-North Front Range Area of Colorado and the Uinta Basin and Northern Wasatch Front areas of Utah, attained the 2015 ozone NAAQS by August 3, 2021;

C. Retain jurisdiction to ensure compliance with the Court's injunctive orders;

C. Grant Plaintiff's costs of litigation, including reasonable attorneys' fees pursuant to 42 U.S.C. § 7604(d); and

D. Grant Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted this 14th day of April.

/s/ Katherine Merlin
Katherine Merlin
WildEarth Guardians
3798 Marshall St., Ste. 8
Wheat Ridge, CO 80033
(720) 965-0854
kmerlin@wildearthguardians.org

/s/ Daniel Timmons
Daniel L. Timmons
WildEarth Guardians
301 N. Guadalupe Street, Suite 201
Santa Fe, NM 87501
(505) 570-7014
dtimmons@wildearthguardians.org

*Attorneys for Plaintiff WildEarth Guardians*